Bettye Michelle JACKSON, ON
BEHALF OF M.J.J.,
Plaintiff,

v.

Nancy A. BERRYHILL, Acting
Commissioner of Social
Security, Defendant.

Civil Action No. 16–cv–47 (BAH/DAR)

United States District Court,
District of Columbia.

Signed 04/07/2017

Stephen F. Shea, Elkind & Shea, Silver Spring, MD, Howard D. Olinsky, pro hac vice, Olinsky Law Group, Syracruse, NY, for Plaintiff.

Maija Pelly DiDomenico, Patricia Anne Stewart, Social Security Administration, Office of the General Counsel, Piladelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

BERYL A. HOWELL, Chief Judge

Plaintiff Bettye Michelle Jackson, acting on behalf of her minor child, M.J.J., brought this action against the Acting Commissioner of the Social Security Administration ("SSA"),[1] challenging the denial of her claim for supplemental security

---

1. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendant the current Acting Commissioner of Social Security, Nancy A. Berryhill, for former Commissioner Carolyn W. Colvin.

income benefits on behalf of M.J.J., who was injured after being struck by a motorcycle. *See* Compl., ECF No. 1; *see also* Administrative Record ("AR") at 14–29, ECF No. 11. An administrative law judge ("ALJ") denied the application, finding that the plaintiff failed to demonstrate that M.J.J. has "marked limitations" in at least two of six statutorily-defined functional domains, which would support a finding of disability. AR 23–29. After exhausting administrative remedies, the plaintiff filed suit in this Court, asserting that the ALJ's determination was "not based upon substantial evidence" and "is the result of harmful errors of law." Compl. ¶ 6. After filing, the case was randomly assigned to a magistrate judge for full case management. *See* Order Referring Case to Magistrate Judge, ECF No. 4.

Before the Magistrate Judge, the plaintiff filed a motion for judgment of reversal, Pl.'s Mot. J. Reversal ("Pl.'s Mot."), ECF No. 15, and the SSA filed a motion for judgment on the pleadings, Def.'s Mot. J. Pleadings ("Def.'s Mot."), ECF No. 16. The plaintiff alleges that the ALJ erred in two ways: first, that the ALJ erred in finding that M.J.J. does not have "marked limitations" in the following functional domains: "attending and completing tasks," and "interacting and relating with others"; and second, that the ALJ failed to properly evaluate non-medical opinion evidence in the Record. *See* Pl.'s Mem. Supp. Pl.'s Mot. at 8–17, ECF No. 15–2. On March 6, 2017, the Magistrate Judge issued a Report recommending that the plaintiff's motion be denied, and that the SSA's motion be granted, since "the ALJ's findings were supported by substantial evidence and were made in accordance with applicable law." *See* Report and Recommendation ("R&R") at 10, ECF No. 20.

■ The R&R cautioned the parties that failure to file a timely objection within 14 days of the parties' receipt of the R&R could result in their waiving the right to appeal an order of the District Court adopting the recommendations. *See id.* at 24. No objection to the R&R has been filed, and the time to file such an objection has lapsed. *See* Local Civil Rule 72.3(b). Thus, any objections are deemed waived. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The Court, upon independent consideration of the pending motions and the entire record herein, concurs with the recommendations made in the R&R. Accordingly it is hereby

**ORDERED** that the Report and Recommendation, ECF No. 20, is ADOPTED in full; and it is further

**ORDERED** that, for the reasons stated in the Report and Recommendation, the Plaintiffs' Motion for Judgment of Reversal, ECF No. 15, is DENIED; and it is further

**ORDERED** that, for the reasons stated in the Report and Recommendation, the Defendant's Motion for Judgment on the Record, ECF No. 16, is GRANTED; and it is further

**ORDERED** that the Clerk of the Court close this case.

**SO ORDERED.**

## REPORT AND RECOMMENDATION

DEBORAH A. ROBINSON, United States Magistrate Judge

Plaintiff, Bettye Michelle Jackson, acting on behalf of her minor child M.J.J., seeks judicial review of a decision by the Acting Commissioner of the Social Security Administration ("SSA") denying her child's claim for supplemental security income benefits pursuant to 42 U.S.C. § 405(g). *See* Complaint (ECF No. 1). This

case was referred to the undersigned United States Magistrate Judge for full case management. 11/29/2016 Docket Entry.

Currently pending for consideration by the undersigned are Plaintiff's Motion for Judgment of Reversal (ECF No. 15), and Defendant's Motion for Judgment of Affirmance (ECF No. 16). Upon consideration of the motions, the memoranda in support thereof and in opposition thereto, and the entire record herein, the undersigned will recommend that the court grant Defendant's motion and deny Plaintiff's motion.

## BACKGROUND

On March 26, 2012, Plaintiff filed a Title XVI application for supplemental security income on behalf of her minor child. Administrative Record ("AR") (ECF No. 11) at 139–47. On the disability report, Plaintiff listed three disabling conditions for her child: a learning disability, head injury, and a speech problem. *See id.* at 168. Plaintiff provided a disability onset date of August 11, 2011. *Id.* at 99. Plaintiff alleged that these disabling conditions arose after M.J.J. was struck by a motorcycle and "sustained a skull fracture and closed head injury with persistent encephalopathy, a right collapsed lung, a Monteggia fracture of the right elbow, and a complex right leg laceration." *Id.* at 18. Plaintiff's application was initially denied by the SSA, and was denied again upon reconsideration. *See id.* at 59–75.

Plaintiff filed a written request for a hearing, *see id.* at 90, and appeared before an Administrative Law Judge ("ALJ") on June 9, 2014, *see id.* at 34. The ALJ denied Plaintiff's application on July 10, 2014. *See id.* at 11.[2] In the decision, the ALJ found that the child had not engaged in substantial gainful activity since the application date. *Id.* at 17. Additionally, the ALJ recognized that Plaintiff has the following severe impairments: "s/p skull fracture and brain injury with encephalopathy and contusions; s/p frontal craniotomy and reconstruction; s/p right collapsed lung; s/p Monteggia fracture of the right elbow; s/p open reduction internal fixation surgery of the right elbow; and s/p complex right leg laceration with skin graft[.]" *Id.* The ALJ also found that the child "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" *Id.* Lastly, the ALJ found that the child does not have an impairment or combination of impairments that "functionally equals the severity of the listings[.]" *Id.*

Based on this determination, the ALJ found that the child "has not been disabled, as defined in the Social Security Act" since the date of application. *Id.* at 29. Plaintiff sought review of the ALJ's decision from the SSA, which the SSA denied on October 30, 2015, thereby rendering the ALJ's decision "the final decision of the Commissioner." *Id.* at 1. Plaintiff then commenced the instant action.

## STATUTORY FRAMEWORK

The Social Security Act established a framework to provide benefits, by way of supplemental income, to eligible disabled individuals. 42 U.S.C. §§ 1381, 1381a. With respect to the eligibility of minors, the statute provides, in pertinent part:

(i) An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

**2.** The ALJ's decision refers to the Plaintiff's child as "the claimant."

(ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C). The SSA has promulgated regulations that outline its process for determining disability for minors. *See* 20 C.F.R. § 416.924.[3] First, the SSA evaluates whether the child is "doing substantial gainful activity"; if so, the child is not disabled. 20 C.F.R. § 416.924(a), (b). If not, the SSA determines whether the child has a medically determinable "physical or mental impairment," or combination of impairments, that is "severe." 20 C.F.R. § 416.924(a), (c). If deemed severe, the SSA then determines whether the impairment, or combination of impairments, "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a), (d). The "listings" refers to a "listing of impairments," found at 20 C.F.R. Part 404, Subpart P, Appendix 1, which, for children, "describes impairments that cause marked and severe functional limitations." 20 C.F.R. § 416.925(a).

When determining whether an impairment, or combination of impairments, functionally equals the listings, the SSA considers six domains, or "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). These domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* A child's impairment, or combination of impairments, "functionally equal the listings" if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). In making this determination, the SSA considers "functional limitations resulting from all of [the child's] impairments, including their interactive and cumulative effects." 20 C.F.R. § 416.926a(e)(1)(i).

If the SSA concludes that the child's impairment, or combination of impairments, meets, medically equals, or functionally equals the listings, and "it meets the duration requirement," the SSA determines that the child is disabled. 20 C.F.R. § 416.924(a).

**APPLICABLE STANDARD OF REVIEW**

A plaintiff may seek judicial review in this court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party." 42 U.S.C. § 405(g). The decision made by the Commissioner will not be disturbed "if it is based on substantial evidence in the record and correctly applied the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). In other words, a "district court's review of the [SSA's] findings of fact is limited to whether those findings are supported by substantial evidence." *Broyles v. Astrue*, 910 F.Supp.2d 55, 60 (D.D.C. 2012) (citations omitted). Substantial evidence is defined as relevant evidence such that "a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). A finding of substantial evidence requires "more than a scintilla, but can be satisfied by something less than a preponderance of evidence." *Id.* (citation omitted) (internal quotation marks omitted).

This Circuit has held that "[s]ubstantial-evidence review is highly deferen-

---

**3.** The regulations provide that benefit payments are to be used for the "current maintenance" of the disabled child, which includes the costs associated with "obtaining food, shelter, clothing, medical care and personal comfort items." 20 C.F.R. § 416.640(a).

tial to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law.'" *Jeffries v. Astrue*, 723 F.Supp.2d 185, 189 (D.D.C. 2010) (quoting *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)). The reviewing court "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits," *Nicholson v. Soc. Sec. Admin.*, 895 F.Supp.2d 101, 103 (D.D.C. 2012) (citation omitted) (internal quotation marks and alteration omitted), but should not "review the case '*de novo*' or reweigh the evidence," *Guthrie v. Astrue*, 604 F.Supp.2d 104, 112 (D.D.C. 2009) (citation omitted). It is the plaintiff who bears the "burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted).

## DISCUSSION

Plaintiff challenges the ALJ's determination on two grounds: (1) the ALJ erred in finding that the child's impairments do not functionally equal the listings of impairments, and (2) the ALJ failed to properly evaluate the opinion evidence in the record. *See* Plaintiff's Memorandum of Points and Authorities ("Plaintiff's Mem.") (ECF No. 15-2) at 8–17. The undersigned disagrees, finding that the ALJ's determinations are supported by substantial evidence in the record and were made in accordance with the applicable law.

### The ALJ's Determination of Plaintiff's Limitations is Supported by Substantial Evidence and Was Made in Accordance with the Applicable Law

Plaintiff's first argument for reversal is that the ALJ erred when he found that the child had less than "marked limitations" in two of the six regulatory domains—attending and completing tasks, and interacting and relating with others. *Id.* at 9. Plaintiff contends that M.J.J. has marked limitations in both of these domains, and therefore meets the requirements for a finding of disability. *See* SSR 09-1p, 2009 WL 396031, at *1 (Feb. 17, 2009) ("To functionally equal the listings, an impairment(s) must be of listing-level severity; that is, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain.").

### Attending and Completing Tasks

The ALJ found that the child has "less than a marked limitation in attending and completing tasks." AR at 25. As the ALJ noted, a "marked" limitation is one that is more than moderate, but less than extreme. *Id.* at 16 (citing 20 C.F.R. § 416.926a(e)(2)(i)). In evaluating the child's limitations in this area, the ALJ acknowledged that "[t]he evidence of record clearly demonstrates the claimant's impairment in this area." *Id.* at 25. The ALJ specifically referenced the child's "problems with concentration and remaining on task," as well as "difficulties with completing classroom tasks independently." *Id.*

Despite that finding, however, the ALJ determined that while the child experienced some limitations, "the record does not support a finding of marked impairment in this area." *Id.* The ALJ found that the child "has been able to attend and progress in school, play games and sports, complete chores, and interact with others with some limitation." *Id.* at 23. Substantial evidence located in the record, and cited by the ALJ, supports such a finding. Plaintiff testified that the child's grades were generally good, the record indicates

that the child remained in school and completed the second grade, and the child's psychological evaluation shows that M.J.J. is in his class's "high reading group." *See id.* at 20, 23, 48, 392. Additionally, the two agency psychologists concurred that M.J.J.'s limitation in attending and completing tasks is less than marked. *See id.* at 62, 72.

Interacting and Relating with Others

■ In the domain of interacting and relating with others, the ALJ found that M.J.J. "has no limitation[.]" AR at 26. The ALJ recounted several examples of the factors to be considered in the determination of this domain, including:

(i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

AR at 26 (citing 20 C.F.R. 416.926a(i)(3); SSR 09-5p, 2009 WL 396026, at *6–7 (Feb. 17, 2009)). The ALJ referenced Plaintiff's concerns regarding M.J.J.'s behavioral problems, including "problems . . . calming self and/or responding appropriately to mood changes, expressing anger appropriately, handling frustration appropriately, following rules, respecting/ obeying adults in authority, and using appropriate coping skills to meet daily demands of the school environment," as well as the fact that M.J.J. "frequently argues with his younger sister." *Id.* at 22. The ALJ also noted that M.J.J.'s "peers teased him about the large scar on his head and [he] routinely reacted with violence[,]" and that the child's behavioral problems that resulted in suspensions "seemed to be a relatively recent problem" which began two years after M.J.J. sustained his injuries. *Id.* at 21. Evaluating this evidence as a whole, the ALJ found that M.J.J.'s "frequent fighting and behavioral problems are related to his being bullied as opposed to an underlying physical injury or mental limitation." *Id.* Accordingly, the ALJ found that M.J.J. had "no limitation in interacting and relating with others." *Id.*

Plaintiff argues that M.J.J. has "at least a marked limitation in attending and completing tasks" and "a marked limitation in interacting and relating to others." Plaintiff's Mem. at 10, 14. In support, Plaintiff cites multiple examples in the record that demonstrate M.J.J.'s problems with impulsivity and concentration, *id.* at 10–12, and interpersonal and behavioral problems, *id.* at 13–14. Plaintiff does not, however, point to any purported error committed by the ALJ other than arriving at the determination that the child's limitation was "less than marked."

Plaintiff appears to be asking this court to conduct a *de novo* review of the ALJ's decision and reweigh the evidence to determine whether or not the child's limitation in each of the two domains is "marked." Such an evaluation, however, is inconsistent with the applicable standard of review. *See, e.g., Guthrie v. Astrue,* 604 F.Supp.2d 104, 116–17 (D.D.C. 2009) ("This Court is not permitted to re-weigh the significance of the evidence in the record, but rather to determine whether the ALJ's decision is supported by substantial evidence."). In lieu of such a review, the undersigned has examined the ALJ's determination and finds that there is substantial evidence in the record to support the ALJ's finding that M.J.J.'s limitations

in attending and completing tasks and interacting and relating with others, are less than marked.

### The ALJ's Evaluation of the Non-Medical Opinions is Supported by Substantial Evidence

■ Plaintiff's second argument for reversal is based on the ALJ's purported failure "to specify how much weight he was affording to the opinions of Special Education Teacher Ms. [Deirdre] Lewis and School Psychologist Ms. [Debra] Chiselom." Plaintiff's Mem. at 17. The applicable regulations provide, in relevant part:

> Other sources. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, *we may also use evidence* from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments.

20 C.F.R. § 416.913(d) (emphasis added). Plaintiff, citing a Social Security ruling, argues that the ALJ "generally should explain the weight given to opinions" from non-medical sources such as Ms. Lewis and Ms. Chiselom. *See id.* at 15 (citing SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).

As Defendant notes, however, the ALJ did mention both the psychological evaluation performed by Ms. Chiselom, and the assessment of M.J.J. by Ms. Lewis in his decision. *See* Defendant's Memorandum in Support of Her Motion for Judgment of Affirmance and in Opposition of Plaintiff's Motion for Judgment of Reversal ("Defendant's Mem.") (ECF No. 16) at 11; AR at 22 ("In making that finding, the undersigned considered the claimant's improvement [in] academic functioning since the accident (discussed by Ms. Jackson at the hearing), the April 2012 psychological eval-

uation and IQ testing . . . and Ms. Lewis' June 19, 2013 assessment of the claimant.").

While the ALJ did not explicitly state what weight he was assigning to either the evaluation or the assessment, the undersigned finds that he has complied with the applicable regulations. SSR 06-03p does provide, in part, that "the adjudicator generally should explain the weight given to opinions from these 'other sources.' " However, the remainder of the regulation, phrased in the alternative, reads: "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, at *6. Here, the ALJ explained his reasoning sufficiently enough to allow the court to discern why he made the determination that he did. Accordingly, the undersigned will recommend that the court affirm the decision of the ALJ.

### CONCLUSION

For the foregoing reasons, the undersigned concludes that the ALJ's findings were supported by substantial evidence and were made in accordance with the applicable law.

It is therefore, this 6th day of March, 2017,

**RECOMMENDED** that Plaintiff's Motion for Judgment of Reversal (ECF No. 15) be **DENIED**; and it is

**FURTHER RECOMMENDED** that Defendant's Motion for Judgment of Affirmance (ECF No. 16) be **GRANTED**.